| STATE OF LOUISIANA IN THE INTEREST OF D.J. | * | NO. 2023-CA-0412 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2022-339-02-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Tiffany Gautier Chase, Judge Rachael D. Johnson)

**JENKINS, J., DISSENTS AND ASSIGNS REASONS**
**JOHNSON, J., DISSENTS FOR THE REASONS ASSIGNED BY JUDGE JENKINS**

Jason Rogers Williams
DISTRICT ATTORNEY
Brad Scott
Patricia Amos
Orleans Parish District Attorney's Office
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Annette Fuller Roach
LOUISIANA APPELLATE PROJECT
P. O. Box 6547
Lake Charles, LA 70606-6547

     COUNSEL FOR DEFENDANT/APPELLANT

AFFIRMED
DATE: October 5, 2023

RLB
TGC
DLD

The juvenile, D.J., appeals his adjudication as a delinquent for three crimes: one count of armed robbery, in violation of La. R.S. 14:64, one count of unauthorized use of a motor vehicle, in violation of La. R.S. 14:68.4, and one count of illegal possession of a firearm by a juvenile, in violation of La. R.S. 14:95.8.  D.J. also appeals the juvenile court's disposition, which ordered him to be placed in custody with the Office of Juvenile Justice ("OJJ") for a term of juvenile life for the offense of armed robbery with a firearm, two years for the offense of unauthorized use of a motor vehicle, and six months for the offense of illegal possession of a firearm.

Based upon our review of the evidence and testimony introduced during the adjudication hearing, and for the reasons that follow in this opinion, we find that the State introduced sufficient evidence, both admissible and inadmissible, to prove the essential elements of each of the three charged offenses beyond a reasonable doubt. Thus, we find the evidence produced by the State has met the minimum standard to sustain the adjudication of D.J. as a delinquent for the three charged offenses, and we affirm the adjudication and disposition.

**Factual Background**

1

On November 30, 2022, D.J. was apprehended for unauthorized use of a motor vehicle. This stemmed from an armed robbery incident the night before involving the same car. Detective April Augustine, of the New Orleans Police Department("NOPD") spotted an Infiniti QX3 which was involved in an armed robbery that Det. Augustine was working that morning. After following the car, she located it outside a barbershop. There, Det. Augustine spotted a "black male with a black puff jacket and fur hood walking towards the barber shop." She recognized this male from her previous investigation the night before. The person, who was later identified as D.J., was arrested after leaving the barbershop. Det. Augustine did not see D.J. park or get out the car. The arresting officers handed her a key fob that they removed from D.J.'s person. When pressed, the fob activated the car that was connected to the robbery.

The arresting officers also delivered to Det. Augustine a gun that they found behind a dresser in the barbershop wrapped up in the black puff jacket. The gun was a pistol with an extended magazine which was also identified as the weapon shown in the video of the carjacking. Det. Augustine's observations of the scene were as follows:

> [Det. Augustine]: Okay. Initially, I was outside of the barber shop after I was informed that he was apprehended. I relocated to the infinity [*sic*]. Officers they did confiscate the gun and they brought it to me, and I secured the firearm in my vehicle temporarily that was recovered from inside the barber shop wrapped inside the black jacket.
> …
> [Defense counsel]: Okay. And so when the gun was recovered, you weren't present, right?
>
> [Det. Augustine]: No.
>
> [Defense counsel]: Okay.
>
> [Det. Augustine]: Not present in the barbershop.

[Defense counsel]: In the barbershop, right. But it's your understanding from the investigation that the gun that was recovered in the barber shop was recovered stuffed behind a dresser or a counter of some sort, right?

[Det. Augustine]: Yes, a dresser.

The other witness called to testify was Detective Anita McKay. She was assigned to work the carjacking case. After reviewing the initial police report, she went to the scene of the offense. At the scene, she was told that the building near where the incident took place was equipped with video. The video surveillance footage of the robbery was described in Det. McKay's testimony:

> "So there was a gentleman clad in a red hoodie/shirt and he opened the driver door of the victim's vehicle and he was armed with a firearm, reached in and pulled her from the vehicle. The victim began to scream in a panic. Another guy exited the driver seat who had on a very distinctive face mask. He came around as if he was going to assist the other gentleman. And there was a third person who had his arm reached out of a partially cracked window from the rear seat. Once the victim was fully out of her vehicle, the guy in the red shirt, he gets in her vehicle and the two vehicles fled the location behind one another."

The first individual was identified as K.B. He is a juvenile co-defendant in the armed robbery charge. K.B. exited his vehicle, opened the victim's car door, and pulled her out. Det. McKay identified the timestamped footage[1]. She testified that after she saw the video, a member of her investigative team showed her an Instagram social media account that was owned by D.J. It contained a still image a young man wearing a "very distinctive full-faced mask", which was the same mask that was seen in the video footage of the robbery. When she was asked about her knowledge that the social media still shot came from D.J.'s account on cross-examination, Det. McKay stated that "resource detectives" determined that the

---

[1] The time stamp was November 29, 2022, at 7:36 a.m.

3

account belonged to D.J.  Over defense objections on the grounds of lack of proper authentication and hearsay, the juvenile court accepted the still photographic image from social media into the record as State's Exhibit 3.

**Procedural Background**

On December 8, 2022, the State filed a petition of delinquency alleging that (1) on or about November 29, 2022, D.J. committed the offense of armed robbery with the use of firearm against Yvette Alfonso; (2) on or about November 30, 2022, D.J. committed the offense of unauthorized use of a motor vehicle belonging to Yvette Alfonso; and (3) on or about November 30, 2022, D.J. committed the offense of illegal possession of a firearm by a juvenile.

On December 13, 2022, the court held an answer hearing and allowed the State to amend its petition to add K.B. as an additional defendant.[2] At the answer hearing, D.J. entered a denial on all three counts.  The State notified the court that it would file an amended petition to correct the information in the allegations. The adjudication hearing was set for February 6, 2023.[3] On February 6, 2023, the juvenile court granted a written motion to continue in favor of the State until March 20, 2023.

Before the date of the adjudication hearing, defense counsel filed a motion to dismiss the State's petition for its failure to file an amendment specifying the locations and times of the alleged offenses.[4]

---

[2] K.B was named as a co-defendant for the charge of armed robbery with the use of a firearm against Yvette Alfonso but the rest of the charges against D.J. stayed the same. Individually, K.B. was charged with a separate count of armed robbery against Anthony Willhide.
[3] K.B. remained in custody with his bond set at $105,000.
[4] The juvenile court denied this motion before starting the adjudication hearing.

D.J. was charged with all three crimes and was adjudicated as a delinquent on March 20, 2023. At that same hearing, K.B. was a co-defendant in the armed robbery charge. K.B.'s status is not at issue in this appeal. D. J. filed a motion and notice of appeal and designation of record, and motion for appointment of appellate counsel on March 31, 2023. The court granted the motions on August 4, 2023. The return date for the notice of appeal was set for June 24, 2023, but D.J. requested and the court subsequently granted an extension to file his original brief.[5]

After his adjudication, D.J. waived the delay for disposition. The juvenile court sentenced him to juvenile life for armed robbery with a firearm, two years in custody for the unauthorized use of a motor vehicle, and six months in custody for illegal possession of a firearm by a juvenile.[6]

D.J. timely noticed his intent to appeal the adjudication and disposition.

**Discussion**

Appellant (D.J.) makes eight assignments of error. D.J.'s first three assignments of error, and main contention, are that the State did not meet its burden of proving beyond a reasonable doubt that the appellant committed the crimes with which he is charged.[7]

---

[5] The extension was granted because counsel had recently received a total hip replacement.

[6] Pursuant to La. Ch. C. art. 897.1, "[a]fter adjudication of a felony-grade delinquent act based upon a violation of La. R.S. 14:64, armed robbery, . . . the court shall commit the child who is fourteen years of age or older at the time of the commission of the offense to the custody of the Department of Public Safety and Corrections to be confined in secure placement without benefit of probation or suspension of imposition or execution of sentence."

[7] The five remaining assignments of error raised by D.J., but not discussed herein, are as follows:

> 4. The juvenile judge committed reversible error in allowing into evidence the video of the alleged armed robbery, because the video was not properly authenticated and the State failed to lay a proper foundation for its admission. Further, the error is not harmless because the detective relied upon the surveillance video in her investigation and testimony and no other evidence was admitted to establish the crime of armed robbery occurred.

D.J. correctly identifies the State's burden of proof as follows:

When a key issue at trial is whether the defendant was the perpetrator of the crime, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. The fact-finder weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. However, we are mindful that the touchstone of *Jackson v. Virginia,* [443 U.S., 307, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979)] is rationality and that irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall,* 523 So.2d [1305] at 1310 [La.1988]. (Some citations omitted.)

D.J. argues that the testimony, video evidence, and Instagram image were not enough for the State to meet their burden of proof for properly identifying D.J. as the culprit in the crime.

Neither of the State's witnesses interviewed the victim in the carjacking. The victim did not testify at the adjudication hearing and did not make any out-of-court identification of the robber. The appellant argues that there was insufficient foundation to enter either the video and social media pages into evidence.

We do not agree that the State's foundation was inadequate. Det. McKay was able to identify the building to which the camera was affixed and testified that she recognized the streets and the landmarks shown in the video. Her testimony

---

5. The juvenile judge committed reversible error by admitting into evidence the handgun purportedly removed from the barber shop by an unidentified person, as a proper chain of custody was not established.

6. The juvenile judge committed reversible error by admitting the Instagram social media image into evidence despite the lack of foundation, authentication, or proof that the individual pictured in the image was D.J. or that it was D.J.'s account.

7. The juvenile judge erred in overruling well grounded hearsay objections, in violation of D.J.'s constitutional rights to confrontation and fair trial. Further, the admission of the hearsay testimony was not harmless because it was the sole evidence presented against D.J. for the charged offenses.

8. The juvenile judge imposed an illegally excessive disposition for the offense of unauthorized use of a motor vehicle.

adequately authenticates the video. Detectives were notified of a social media page belonging to D.J. The page had a post showing a man wearing a distinct type of face mask similar to that worn by the robber in the video. The detective was the leader of a team of investigators who worked together to find the Instagram account. She was able to see the account for herself and, as such, was able to identify it for the court.

The State's case is built primarily upon circumstantial evidence. When the State relies upon circumstantial evidence to prove the elements of a crime,

> [t]he reviewing court "does *not* determine whether another *possible* hypothesis has been suggested by defendant which *could* explain the events in an exculpatory fashion; rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the alternative hypothesis is sufficiently reasonable that a rational factfinder could not **'have found proof of guilt beyond a reasonable doubt.'** *Captville*, 448 So.2d at 680 (emphasis in original; citations omitted). *State v. Jones*, 2016-1502 (La. 1/30/18), 318 So. 3d 678, 682.

This standard of review is set forth in *Jackson, supra.* The standard was not original to the Jackson court and it has been cited in our appellate courts and Supreme Court in an unbroken chain of jurisprudence since *Jackson* was decided in 1979. In *State v. Green*, 588 So.2d 757, 758 (La. App. 4 Cir. 1991), we wrote that, "If rational finders of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted." We hold that the evidence admitted at trial, when viewed in the light most favorable to the prosecution would support the trial court's adjudication.

In regards to the charge of unauthorized use of a motor vehicle, D.J. contends that the State had to prove "1) D.J. took or used the Infiniti QX3; 2) that the Infiniti QX3 belonged to another person; and, 3) that the owner did not consent

7

to D.J. taking or using the Infiniti QX3." D.J. argues that the State never showed ownership, or identified the person driving the car. Again, using the analytical method dictated by *Jackson* and *Green, supra*, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found proof beyond a reasonable doubt that D.J. committed the offense charged. Det. Augustine identified a key fob, which was recovered off D.J.'s person at the barbershop. When pressed, the fob activated the stolen vehicle. Det. Augustine also testified that she and her colleagues followed the Infiniti vehicle because they had identified it as the vehicle that was reported stolen in the carjacking. She also identified D.J. as the person who was seen walking away from the car and toward the barbershop. Taken together, these known facts support the trial court's adjudication.

Using the same standard, we also reject D.J.'s argument that the State's evidence was insufficient to support the adjudication regarding the weapon possession charge. Det. Augustine testified under oath that she saw D.J. walking to the barbershop wearing a "black puff jacket". She testified that after D.J. was apprehended, the arresting officers located that same puff jacket behind a dresser in the barber shop wrapped around the gun that is the object of the possession charge. The jacket and the gun were concealed in a place to which D.J. had access at the time that he was apprehended. The circumstantial evidence would dictate that the only way that the weapon got into the jacket and became wrapped in the jacket and concealed in the area where D.J. was arrested is if he wrapped the weapon and hid it.

On the last assignment of error, D.J. claims that a sentence of two years for unauthorized use of a motor vehicle is too harsh. La. R.S. 14:68.4(c) states that

8

"When the misappropriation or taking amounts to less than a value of one thousand dollars, the offender shall be imprisoned for not more than six months, or fined not more than one thousand dollars, or both." D. J. says that the imposition of a two year sentence is excessive because the State offered no proof of the value of the vehicle. The State argues that La. R.S. 14:68.4 requires proof only if it involves section (c) and that "this record contains information on the make and model of the vehicle (an Infiniti QX3) and excellent video showing its condition at the time it was taken from Yvette Alfonso". We accept the State's argument. The fact that the car in question could be seen in the video to be in excellent condition and of a make and model in the upper end of the spectrum of automobiles would lead any rational trier of fact to conclude that the vehicle in question had a value in excess of the statutory amount.

**CONCLUSION**

For the reasons above, we hold that the adjudication by the trial court was correct and should be upheld.

**AFFIRMED**